CHARLES SCRIBNER'S SONS v. S. M. N. MARRS, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION.

No. 4023.  Decided May 7, 1924.

(262 S. W., 722.)

1.—Constitutional Law—Contract by State—Term of Years—Creation of Debt—Appropriations—Public Schools—Monopolies.

A contract by the State with publishers adopted a certain textbook for use in its public schools for a term of five years and provided for the furnishing of same as required during such time and for payment therefor as furnished out of the State School Fund. Held:

(1). The Legislature can exercise all the legislative power of the people, subject only to the limitations expressed in the Constitution, and its acts and contracts will not be held invalid or unconstitutional unless clearly so. (P. 21).

(2). The State has the power to contract; and unless limited by organic law, the subjects of contract, the length of the term for which it may be made, and the general policy regarding contracts, are within the legislative prerogative.  (P. 21).

(3). The making of such contract by the State Textbook Commission as authorized by the statute (Art. 2909b) was not the exercise of a legislative function by that body, but the performance of its ordinary business affairs, and was not invalid as an infringement on the powers of its legislative successors. City of Brenham v. Brenham Water Co., 67 Texas, 542, distinguished. (Pp. 21, 22).

(4). The contract in question did not create a monopoly such as is forbidden by article 1, section 26, of the Constitution.  (P. 21).

(5). Contracts by the State creating obligations for future years that run current with future revenues do not create a debt by the State forbidden by article 3, section 49, of the Constitution. The obligation to pay and the debt thereby created arises only from year to year as the books are required and furnished. (Pp. 22, 23).

(6). Such contract is not repugnant to the requirement of article 8, section 6, of the Constitution, that no appropriation be made for a longer term than two years. No limitation to such period of the power of the State to contract is thereby implied as a public policy. (P. 24).

(7). The Legislature having determined the public policy of the State as to such contracts by fixing a limit of six years for their duration, it is not for the courts to announce a different one. (P. 24).

(8). The validity of the powers of contract conferred by article 2900b is also sustainable under the provisions as to school funds and books in article 7, section 3, of the Constitution, in view of the circumstances of its adoption, the State having then for thirty years had statutes providing for uniform textbooks, not free, and fixing the term for which they should be adopted. (Pp. 24-26).

2.—Mandamus—School Textbooks—Board of Education—State Superintendent.

The State Board of Education, having contracted with a publisher for supplying a certain textbook to public free schools and directed the State Superintendent to send out requisition blanks therefor to the proper school authorities, in an action for mandamus to require him so to do it is held·

(1). The duties of the State Superintendent of Public instruction in the performance of the publisher's contract to furnish books are purely ministerial. He is without authority to contest the validity of such contract on account of alleged irregularities in its execution, such as that the form of written contract and the bond of the publisher to secure its performance had not been submitted to and approved by the State Textbook Commission (Rev. Stats., art. 2909h) though signed and approved by the Governor as its chairman. (P. 26).

(2). The contract and bond having been executed and in form and manner theretofore followed as a substantial compliance with the statute and the carrying out of its performance and distribution of the state funds therein entrusted exclusively to the State Board of Education (American Book Co. v. Marrs, 113 Texas, 291, 253 S. W., 817) it was for that body to determine the validity of the contracts requiring action from the State Superintendent and to direct his action therein. His duty to so act was a ministerial one and could be enforced by mandamus. If there was question existing as to the validity of the contract which the Board of Education was attempting to carry out, the Attorney-General was the officer who should bring action to cancel same, if the State determined to pursue that course. (Pp. 26-28).

(4). Where the contract was made in a bona fide effort to comply with the law the State may, at its election, bring suit by its Attorney-General to cancel such contract for any invalidity in its execution (Rev. Stats., art. 2909n) but is not compelled to do so if it desires the benefit of the contract. (Pp. 27-28).

(5). The contract appearing regular on its face, it was not the province of courts or of the Attorney-General to exercise the State's right of election whether to enforce or to cancel it. (P. 28).

(6). The contract in question was not absolutely void for the irregularity in question, but only voidable. (Pp. 28, 29).

ON MOTION FOR REHEARING.

3.—Contract—Textbooks—Bond.

The bond being executed by a qualified guaranty corporation (Rev. Stats., art. 4928) its approval involved no discretion, and being obligatory the law supplies such act. Under the admitted facts the contract and bond here considered are regular in form and amount. (Pp. 29, 30).

**4.—Same—Waiver.**

If the contracts were irregular, and voidable for that reason, the right of the State to waive the irregularity, or at its election to require proceedings by the Attorney-General for their cancellation, was exclusively conferred on the State Board of Education, they having the ultimate authority for purchase and distribution of textbooks. Such election was not to be made by the Attorney-General or by the State Superintendent. (Pp. 30, 31).

Original application by Chas. Scribner's Sons to the Supreme Court for writ of mandamus against Marrs as State Superintendent of Public Instruction.

*R. L. Batts, V. L. Brooks, Jas. H. Hart, H. M. Garwood, Walter H. Walne,* and *E. F. Smith,* for relator.

In support of our proposition that there is a legal duty imposed by law on respondent to do that which relator in its petition prays the court to command him to do, we respectfully call the attention of the court to that part of the petition in which it is alleged that the State Board of Education has ordered respondent to do the very thing that relator requests this court to compel him to do. It is the duty of respondent to obey the orders of the State Board of Education. Section 8, Article VII, Constitution of Texas; Section 3, Article VII, Constitution of Texas; Article 2904¼, Texas Complete Statutes, 1920; Article 2904¼d, Texas Complete Statutes, 1920; Article 2904¼I, Texas Complete Statutes, 1920; American Book Company v. Marrs, 253 S. W., 817.

It is the legal duty of the respondent to do that which relator prays this court to compel him to do, because the State Board of Education, his immediate superior, has ordered him to do that thing. Relator has a legal right to the relief prayed for because it has a valid contract with the State of Texas to furnish the books mentioned in its petition, and the action of the respondent in refusing to obey the orders of the State Board of Education not only prevents the State of Texas from receiving but also prevents this relator from furnishing its said books, as provided for in said contract. American Smelting & Ref. Co. v. United States, 259 U. S., 75; United States v. Purcell Envelope Co. 249 U. S., 313; United States v. New York & Porto Rico Steamship Co., 239 U. S., 88; Garfielde v. United States, 93 U. S., 242; State v. Toole, 26 Mont. 22; American Lighting Co. v. McCuen, 92 Md., 703; Rand-McNally Co. v. Royal, 78 Pac., 1103.

The provisions of Articles 2808f and 2909h, Texas Complete Statutes 1920, are directory and not mandatory. French v. Edwards, 13 Wall., 506; Wright v. Jones, 120 S. W., 1139; Wheeler v. City of

Chicago, 24 Ill., 105; Adams v. Sleeper, 24 Atl., 990; Arthur v. Adam & Speed, 49 Miss. 404; Talbot Co. v. House; 20 Ga., 329; Lackawana Co. v. Town of Little Wolf, 38 Wis., 152; Cake v. City of Los Angeles, 130 Pac., 723; McCrea v. Haraszthy, 51 Cal., 146; Gallup v. Smith, 23 Atl., 134; Green v. Wardwell, 17 Ill., 278; Bartlett v. Board of Education, 59 Ill., 364; St. Louis Railroad v. Wilder, 17 Kans., 239; Pearson v. School District, 129 N. W., 940; Reid v. Southern Devel. Co., 42 So., 206; Sutherland on Statutory Construction, secs. 451, 452, 453; Black on Interpretation of Laws, pages 339-346.

The State Textbook Commission, having exercised its discretion and judgment in adopting relator's books, and in awarding to relator on its written bid the contract to furnish books and in fixing the amount of its bond, had authority to then delegate to its chairman, the Governor of Texas, the ministerial duty of approving said contract and bond. Galveston County v. Gresham, 220 S. W., 560; Adams v. State, 172 S. W., 219; Wright v. Jones, 120 S. W. 1139; Matagorda County v. Casey, 108 S. W., 476; Smith v. Swan, 22 S. W., 247; Hitchcock v. Galveston, 96 U. S., 341; Cass County v. Gibson, 107 Fed., 363; Estill County v. Embry, 144 Fed., 913; State v. Common Council of Asbury Park, 40 Atl., 690; Trust Co. v. Milwaukee County, 148 N. W., 22; Dunn v. Dixon County, 165 N. W., 959; Green County, v. Shortell, 75 S. W., 251; City of Burlington v. Denison, 42 N. J., 165; Reuting v. City of Titusville, 34 Atl., 916; McCaleb v. Dreyfus, 103 Pac., 924; Hildreth v. City of Longmont, 105 Pac., 107; Donnelly v. City of New Haven, 111 Atl., 897; Goodyear Rubber Co. v. City of Eureka, 67 Pac., 1043; Hannibal Ry. Co. v. Marion County, 36 Mo., 294; Dancer v. Town of Mannington, 40 S. E., 475; Gillette v. Board of Supervisors, 67 Ill., 256.

The construction placed on statutes by the executive officers charged with their enforcement, and by the Attorney-General of Texas, will be followed by the courts in all doubtful cases. Moorman v. Terrell, 202 S. W., 727; Koy v. Schneider, 221 S. W., 880; Harris County v. Hammond, 203 S. W., 445; Hammond v. Harris County, 243 S. W., 1002; Kern River Co. v. United States, 42. S. Ct. 60.

The respondent cannot question the existence or validity of relator's contract with the State because it is his legal duty to obey the order of the State Board of Education, and for the further reason that he is not a party to the contract and has no interest therein. Rand-McNally & Co. v. Royal, 78 Pac., 1103; State ex rel. Sellers v. Fifth Jefferson Drainage District, 92 So., 592; State ex rel. Holmes v. Kernes, 167 S. W., 1080; State v. Chapman, 65 N. E., 154; Territory v. Caffrey, 57 Pac. 204; State ex rel. Bean v. Lyons. 96 Pac., 922.

It is, we think, well settled by authority that the State, in the management of its public institutions, such as schools, may make exclusive contracts for reasonable periods of time for the furnishing of schools books, and that such contracts will not be held unconstitutional as fostering monopoly, and that upon similar principles governmental bodies may make such special arrangements as they please in the construction of public works or the management of public properties. The adjudications on this subject are so numerous that we deem it unnecessary and inadvisable to do more than cite them and state the principles on which such decisions rest. Among the cases which sustain this proposition are the following: Leeper v. State, 103 Tenn., 500, 53 S. W., 962; State v. Haworth, 122 Ind., 462; Rand v. Hartranft, 29 Wash., 591; State v. Columbus Board of Education, 35 Ohio St., 368; Dickinson v. Cunningham, 140 Ala., 527; People v. Oakland Board of Education, 55 Cal., 331; State v. State Board of Education, 18 Neveda 173; Lake View Schools v. People, 87 Ill., 303; Baltimore City School Commissioners v. State Board of Education, 26 Md., 505; Johnson Pub. Co. v. Mills. 79 Miss., 543; Bancroft v. Thayer, Fed. Cas. No. 835, 5 Sawyer, 502; Campana v. Calderhead, 17 Mont., 548; Curryer v. Merrill, 25 Mont., 1; Jones v. Detroit Board of Education, 88 Mich., 371.

We think that the provisions of section 6 of article VIII of the Constitution with reference to appropriations do not in anywise affect the right of the State to obligate itself by contract or otherwise for the payment of money during a period of more than two years, but that these constitutional provisions merely constitute limitations upon the right to draw money from the State Treasury and prescribe the procedure requisite for drawing money from the State Treasury. We think, furthermore, that even if it should be conceded that we are mistaken in the above expressed view, the school amendment to the Constitution of 1917 itself makes a permanent appropriation of the money necessary to buy free textbooks for the public schools, and that the two-year provision of section 6 of article VIII has no application to appropriations to buy free textbooks for the public schools.

*W. A. Keeling, Attorney-General, Jno. C. Wall, Frank M. Kemp,* and *Bruce M. Bryant, Assistants, Charles L. Black, A. M. Frazier, T. N. Jones,* and *Etheridge, McCormick & Bromberg,* for respondent.

A contract for the purchase of textbooks attempted to be entered into otherwise than by the mode prescribed by the statute is a nullity. Texas Statutes, "Bulletin 144"; Effingham v. Hamilton, 68 Miss., 523; Dement v. Rokker, 126 Ill., 174; State v. Opperman, 74 Texas, 136; Honaker v. Board of Education, 42 W. Va., 170, 57 Am. St.

Rep., 847; Honey Creek School Township v. Barnes, 119 Ind., 213; Shinn v. Board of Education, 39 W. Va., 498; Coler v. City of Cleburne, 131 U. S., 162; Anthony v. County of Jasper, 101 U. S., 693; Bissell v. Spring Valley Township, 110 U. S., 162; McGarrahan v. Mining Co., 96 U. S., 316; Ferguson v. Halsell, 47 Texas, 421; Kerbow v. Wooldridge, 184 S. W., 750; French v. Edwards, 13 Wall., 506; People v. Dulaney, 96 Ill., 503; Pohle v. Robertson, 102 Texas. 274, 277; City of Bryan v. Page, 51 Texas, 532; Miller v. State, 69 S. W., 525; Fayette County v. Krauze, 73 S. W., 53; Penn v. Laredo, 26 S. W., 636; Nichols v. State, 32 S. W., 453, 454; Peck v. City of Hempstead, 65 S. W., 653; Zottman v. San Francisco, 20 Cal., 96, Fiske v. City of Worcester, 219 Mass., 428, 106 N. E., 1025; Adams v. Essex County, 205 Mass., 189, 91 N. E., 557; Carpenter v. Yeadon Borough, 208 Pa., 396, 57 Atl., 837; City of Wellston v. Morgan, 65 Ohio St., 219, 62 N. E., 127; Donnelly, Law of Public Contracts, sec. 5; 2 Lewis' Sutherland, Statutory Construction, sec. 492. Distinguished: Hitchcock v. Galveston, 96 U. S., 341; Wright v. Jones, 120 S. W., 1139.

The acceptance of appellant's bid by the Commission was but a step in the negotiations and did not constitute a contract. Clark v. United States, 95 U. S., 539, 546; Capital Print-Co. v. Hoey 124 N. C., 767; Edge Moor Bridge Works v. County of Bristol, 170 Mass., 528, 532, 534; Water Commissioners v. Brown, 32 N. J. Law (3 Vroom) 504; Hepburn v. Philadelphia, 149 Pa., 335; Press Publishing Co. v. Pittsburgh, 207 Pa., 623; Day v. Ryan, 245 Pa., 154; State ex rel. v. Board of Public Service, 81 Ohio St., 218; Starkey v. Minneapolis, 19 Minn., 203; Mann v. Rochester, 29 Ind. App., 12; Johnston v. City of Philadelphia, 113 Fed., 40; South Boston Iron Co. v. United States, 118 U. S., 37; Monroe v. United States, 184 U. S., 524. Distinguished: Pearson v. School District, 129 N. W., 940; Wright v. Jones, 120 S. W., 1139; Matagorda County v. Casey, 108 S. W., 476; State v. Shawkey, 93 S. W., 759; Galveston County v. Gresham, 220 S. W., 560; American Smelting & Refining Co. v. United States, 259 U. S., 75; United States v. Purcell Envelope Co., 249 U. S., 313; United States v. New York & Porto Rico Steamship Co., 239 U. S., 88; Garfielde v. United States, 93 U. S., 242.

The duty devolved by the statute upon the Commission to pass upon and approve or reject bonds and contracts, being for the protection of the public, is mandatory and non-delegable. Coler v. City of Cleburne, 131 U. S., 162; Anthony v. County of Jasper, 101 U. S., 693; Bissell v. Spring Valley Township, 110 U. S., 162; McGarrahan v. Mining Co., 96 U. S., 316; O'Reilly v. Edrington, 96 U. S., 724; Haskins v. Railway Co., 109 U. S., 106; Dunn v. United States, 238 Fed., 508; Ferguson v. Halsell, 47 Texas, 421; Brown v. Newburyport, 209 Mass., 259, 95 N. E., 504; Wykoff v. Wheeler, 38 Okl.,

771, 125 Pac., 399; State ex rel. State Publishing Co. v. Hogan, Sec. of State, 22 Mont., 384, 55 Pac., 818; Maynard v. Olson, 48 Kan., 565, 30 Pac., 16; Monroe v. United States, 184 U. S., 524; Camp v. McLin, 44 Fla., 535; Murphy v. City of Louisville, 9 Bush, 189; Walker v. Finley, 94 Texas, 145; Matter of Industrial Savings Bank, 75 N. Y., 388; 25 R. C. L., 770, sec. 17; Cooley, Municipal Corporations, page 238; 3 Page, Contracts, 2Ed., sec 1866. Distinguished: Rand, McNally & Co. v. Royal, 78 Pac., 1103; American Smelting & Refining Co. v. United States, 259 U. S., 75; United States v. Purcell Envelope Co., 249 U. S., 313; United States v. New York & Porto Rico Steamship Co., 239 U. S., 88; Garfielde v. United States, 93 U. S., 242.

The purported order of the Board of Education, relied upon by appellant, is void for lack of jurisdiction. Texas Constitution, Article VII, Secs. 1 to 8 inclusive; Railway Co. v. Randolph, 24 Texas. 317; State v. McAlister, 88 Texas, 284, 285; American Book Co. v. Marrs, 253 S. W., 817; Cohens v. Virginia, 6 Wheat., 264; McClelland v. Rose, 208 Fed., 503, 512; Parks v. West, 102 Texas, 11, 16; Odell v. Wharton, 87 Texas, 173; Wiederanders v. State, 64 Texas, 133, 141; State v. Moore, 57, Texas, 307, 311, 312; Ng Fung Ho v. White, 259 U. S., 276; McFall v. State Board of Education, 101 Texas, 572; Cunningham v. Robinson, 104 Texas, 227; Durrill v. Robinson, 138 S. W., 107; G. C. & S. F. Ry. Co. v. Lemons, 152 S. W., 1189, 1191, 1192; American School of Magnetic Healing v. McAnnulty, 187 U. S., 94; Coler v. City of Cleburne, 131 U. S., 162; 8 Cyc., 753; 12 C. J., 730; Cooley, Constitutional Limitations, 99, 100. Distinguished: United States v. Purcell Envelope Co., 249 U. S., 313.

Appellees are not concluded by appellant's unconsummated or void contracts. Juneman v. Franklin, 67 Texas, 414; Thouvenin v. Rodrigues, 24 Texas, 468; Blodgett v. Lanyon Zinc Co., 120 Fed., 893. 897; Rib Falls Lumber Co. v. Lesh & Mathews Lumber Co., 144 Wis., 362; Swift & Co. v. Platte, 68 Kan., 1; Windsor v. McVeight, 93 U. S., 274, 277, 278; McGarrahan v. Mining Co., 96 U. S., 316; Smelting Co. v. Kemp, 104 U. S., 636; Doolan v. Carr, 125 U. S., 618; Marsh v. Nichols, 128 U. S., 605.

The contracts in these cases, extending as they do through periods of five and six years, to be discharged out of future appropriations, constitute a debt inhibited by the Constitution. McNeal v. Waco, 89 Texas, 83; State v. Candland, 36 Utah, 406, 24 L. R. A., (N. S.) 1260; State v. Medbery, *supra;* Salem Water Co. v. Salem, 5 Oregon, 29; Springfield v. Edwards, 84 Ill., 626; Burlington Water Co. v. Woodward, 49 Iowa, 61; State v. City of Bayonne, 55 N. J. Law, 241, 26 Atl., 81.

MR. JUSTICE PIERSON delivered the opinion of the court.

Relator, Charles Scribner's Sons, a corporation, seeks a writ of

mandamus against respondent to compel him to do the ministerial acts required of him under R. S., Arts. 2904-1/4i and 2909ii of the textbook law looking to the performance of its alleged contract with the State of Texas, entered into between it and the Texas State Textbook Commission, by the terms of which it had contracted and obligated itself to furnish and sell to the State of Texas textbooks known as "Fundamentals of Farming and Farm Life", by Kyle & Ellis, and the State of Texas had obliged itself to use said textbooks in its public schools. By its terms the contract is to be in force and effect for a period of *five* years.

Relator alleged that the State Board of Education, composed of the Governor of Texas, the Secretary of State, and the Comptroller of Public Accounts, is invested by Art. 7, Sec. 8, of the Constitution of Texas and by the statutes of the State with the administration of the public school funds and with the duty to determine who have contracts with the State for the supplying of textbooks for use in the schools, and, under the management of the Superintendent of Public Instruction, is charged with the duty of purchasing and distributing free textbooks to the schools. In this regard relator alleged that the said State Board of Education in formal session had found that relator was a contractor with the State for the textbooks mentioned herein under a regular and valid contract made with the State Textbook Commission and had entered its order directing respondent to send out requisition blanks to the proper school authorities, containing the names of relator's books, and had otherwise directed the observance and performance of the contract under the law; but that respondent has refused and refuses to comply with said order and to discharge his ministerial duty looking to the performance of its contract, to its injury, and that it is entitled to the writ of mandamus.

In general, respondent admits the correctness of the facts alleged by relator and the acts leading up to the making of the contract on the part of relator and the State Textbook Commission under bid and award as provided by the law, to the effect that the contract in all things is correct and in accord with the bid and award; that it was put into proper form by the Attorney General of the State; that the Textbook Commission, by resolution, expressly authorized and directed the Governor as its chairman to approve and sign the contract; that, after being marked "o. k." by respondent Marrs, as Secretary of the Textbook Commission, the Governor, under the authority and in compliance with said resolution, had approved said contract, and had signed it on behalf of the State in his capacity as chairman of the Commission as provided by said Article 2909h; that the bond as required by law was prepared by the Attorney General of Texas in amount as directed by the Commission, that it had

been submitted to and marked "o. k." by respondent Marrs, as Secretary of the State Textbook Commission, and accepted in lieu of a preliminary bond on file with the State Treasurer as required by law, which said preliminary bond was, by instruction of respondent Marrs, released and returned to relator by the State Treasurer, and that the said bond required to be filed with this contract was accepted by the Governor and filed with the Secretary of State. But he says that after the agreement had been made between the Textbook Commission and relator, and after the terms of the contract had been reduced to writing by the Attorney General of the State in accord with the terms of agreement between relator and the Textbook Commission, said contract so put into written form had not been submitted to and approved by the Textbook Commission in session, in compliance with the provisions of Art. 2909h of the statute, but instead was submitted to and approved by the Governor of the State, as Chairman of the State Textbook Commission; and also that the bond required of relator had never been submitted to nor approved by the *Textbook Commission.* Respondent's position is that the provisions of Art. 2909h are mandatory wherein it is provided: "Each contract shall be duly signed by the publishing house or its authorized officers and agents; and if it is found to be in accordance with the award and all the provisions of this Act, and if the bond herein required is presented and duly approved the commission shall approve said contract and order it to be signed on behalf of the State by the Governor in his capacity as chairman;" that this provision was not complied with, and therefore *no contract* was perfected and actually entered into between relator and the State Textbook Commission.

As to the defense of respondent that the contract and bond were not "submitted to and approved by the Commission", relator's position is that these acts were done in substantial compliance with the statute; that the State Board of Education has acted in the matter of its contract, directing respondent to observe it; that respondent has no discretion in the matter, that his duties are wholly ministerial and that he has no authority to contest the validity of its contract.

Thus having stated the case, we will proceed to its consideration.

The question of first importance and first to be determined is the constitutionality of that provision of the statute which authorizes contracts for a period of *six years,* and the validity of this contract for *five years* under its authority.

Article 2909b R. S. authorizes the State Textbook Commission to make contracts for textbooks to be used in the public schools for a period of time "not less than one year and not more than *six years* as may be determined by the Commission."

The provisions of the contract between relator Charles Scribner's Sons and the State, pertinent to this inquiry, are:

"Said contractor covenants and agrees, for a period of time beginning September 1, 1923, and ending with the close of the scholastic year which begins September 1st, 1928, to supply and sell to the State of Texas, for use in the public schools of the State of Texas the following named textbooks on the following conditions, and at retail and exchange prices indicated, as follows: Kyle & Ellis' 'Farming and Farm Life'."

"It is understood and agreed that the State of Texas shall not be, or become, liable to the contractor herein 'for any sum, whatsoever, but said contractor shall receive compensation solely and exclusively from the proceeds of the sale of the school book hereinbefore mentioned."

"Said Commission, by virtue of the authority vested in it by the Act of the Legislature of the State of Texas, hereinbefore mentioned, and on the behalf of the State of Texas, agrees and convenants that the textbook above mentioned shall be introduced into and used in the public free schools of this State to the exclusion of all others for the period of time aforesaid, covering scholastic year beginning September 1, 1923."

"This contract is made and executed in pursuance of the directions contained in said Chapter 44 of the General Laws * * * and is to be construed in reference thereto. *. * * all requirements, stipulations and obligations imposed by the Act aforesaid are made a part of this contract."

"This contract is, by order of the Commission, signed on behalf of the State by the Governor, Pat M. Neff, in his capacity as Chairman of the Commission.

"IN WITNESS WHEREOF, the parties hereto have on this the 9th day of December, A. D., 1922, set their hands and seals in duplicate.

(Signed) "Pat M. Neff, Governor, State of Texas, and Chairman of the Texas State Textbook Commission.

(Signed) "Charles Scribner's Sons,

"By: D. S. Furman, Attorney in Fact.

"O. K.    S. M. N. Marrs, Sec'y."

Article 3, Section 49, of the Constitution provides:

"No debt shall be created by or on behalf of the State, except" * * *. (The exceptions are not important here.)

Article 8, Section 6, provides:

"No money shall be drawn from the treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years."

Article 7, Section 5, provides:

"And the available school fund shall be applied annually to the support of the public free schools."

Article 1, Section 26, prohibits monopolies.

Such questions as are here involved, on account of their intricate nature and great importance, have always entailed great labor and far research upon the part of the courts, and usually have required lengthy and exhaustive discussions. We have met the burden of a lengthy and exhaustive research, but, as far as possible, will endeavor to avoid a lengthy discussion.

The State Legislature may exercise all the legislative power of the people, subject only to the limitations expressed in the Constitution of the State or of the United States. Brown v. Galveston, 97 Texas, 1, 75 S. W., 488; Conley v. Daughters of the Republic, 106 Texas. 90, 156 S. W., 197, 157 S. W., 937; Encyclopedic Digest (Michie), Vol. 4, pp. 406, 407, 408.

A statute will not be held unconstitutional unless it is clearly so, and a contract will not be held invalid unless there is a legal reason for doing so. See State v. Humble Pipe Line Co., 112 Texas, 375, 247 S. W., 1082; Smith v. Patterson, 111 Texas, 535, 242 S. W., 749, and cases cited.

These fundamental principles are applicable here in determining the constitutionality of Article 2909b of the Revised Statutes and the validity of the contract authorized by it.

This Court, in an opinion by Judge Williams, in the case of Lindsey v. State, 96 Texas, 588, 74 S. W., 751, said:

"We must take and apply the plain language of the Constitution as we find it and can not add to it so as to restrict the powers of the Legislature further than such language restricts it, in order to prevent a fancied mischief. 'We are not to import difficulties into a Constitution by a consideration of extrinsic facts, when none appear upon its face.' Cooley, Const. Lim., 78."

The Constitution is silent as to the length of term for which a contract may be made by the State. The only provisions of the Constitution that might affect the term are those which provide that no debt may be created by or on behalf of the State, and that no appropriation of money may be made for a longer term than two years, and perhaps the provision prohibiting monopolies. The contract under consideration does not partake of the nature of a monopoly.

The State in its sovereignty has the right and power to contract. Unless limited by organic law, the subjects of contract, the length of term for which a contract may be made, and the general public policy regarding contracts, are within the legislative prerogative.

The contract under consideration is one which the State Textbook Commission had legislative authority to make. The statute expressly

authorizes the making of a contract for a period of time not to exceed six years.

The making of this contract  by the State  Textbook Commission was not the exercise of any legislative function or power on its part, but the performance of the ordinary business affairs  of that body. Therefore, the contract is not one which, in effect, precludes it from exercising from time to time any power legislative in character conferred upon it by law, if indeed it has any such powers; and its act in making the contract is not controlled by the limitation that the power to make contracts which affect  governmental  or legislative functions must be so exercised as not to infringe upon the powers of its successors.  This is stated that the law of this contract may not be confused with such other contracts as were under consideration in the case of City of Brenham v. Brenham Water Co., 67 Texas, 542, 4 S. W., 143, and cases which follow it.  In that case, in reviewing the contractual powers of cities, Judge Stayton said:

"We do not wish to be understood to hold that a municipal corporation has no power, in any event, to contract for such things as are consumed in their daily use for a period longer than the official term of the officers who make the contract; but we do intend to be understood to hold that such corporations have no power to make contracts, continuous in character, in reference to such things or any others by which they will be, in effect, precluded  from exercising from time to time any power, legislative in character, conferred upon them by law."

That case is based upon the idea that under the terms of that contract the city had divested itself of the exercise of governmental and legislative functions, and for that reason it was objectionable, and that the contract created a monopoly.

Obligations that run current with revenues are not debts within the contemplation of the  Constitution.  For full  discussion of this subject, see McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322; Corpus Christi v. Woessner, 58 Texas, 465; Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; City of Tyler v. Jester & Co., 97 Texas, 344, 78 S. W., 1058; City of Valparaiso v. Gardner, 97 Ind., 8, 49 Am. Rep., 416; City of Cleburne v. Cleburne Water, etc. Co., 14 Texas Civ. App., 229, 37 S. W., 655, writ of error denied; Dallas Electric Co. v. City of Dallas, 23 Texas Civ. App., 323, 58 S. W., 153, writ of error denied.

In the case of City of Tyler v. Jester & Co., supra, this Court said:

"The making of a contract for water for a number of years, to be delivered in the future, did not create a debt against the city, but the liability of the city arose upon the use by it of the water during each year."

This contract obligates the State *to introduce into and use* relator's books in the public free schools for a period of five years. It obligates relator to furnish, offer, and sell these books to the State each year for five years, upon the requisition of the school authorities each year for such books as may be needed. Payment for them is to be made out of the current fund each year as they are purchased. The obligation of the contract is not to buy a fixed number or amount of books, but only so many as are *needed* by the schools of the State. Liability is fixed only for such amounts as are requisitioned by the trustees of the schools. The number of books purchased for any year and the amount of money applied thereto is wholly within the control of the school authorities.

The contract is for *uniform textbooks* for a period of five years: No quantity is stipulated and no promise to pay, only an agreement to use the books in the schools. The statute and the contract provide that *no debt is created*. The obligation to pay arises only upon the purchase and delivery of books for the year when needed, and according to the purchase. The books so furnished and so purchased during any year do not make a charge on the future resources of the State, but are paid for each year as the purchases are made.

It logically follows that the contract is not repugnant to that part of Section 6, Article 8, of the Constitution, which provides: "Nor shall any appropriation of money be made for a longer term than two years."

If any particular school district had no need of any new books of the kind provided for in this contract, its trustees would make no requisition for any; or if all the districts of the State should be supplied, none would be furnished, and the matter of making appropriation would not arise.

One year of the contract has already expired. No purchases have been made under it, and consequently no payment made, and no question of appropriation has arisen. No debt has been created, and no demand made based upon it.

No action could be maintained on the contract against the State, even if permission to sue were given, for the recovery of compensation under the contract, without evidence that books had been furnished. This proves that there is no debt created until books have been supplied in accordance with the terms of the contract; and, also, that no appropriation was necessary "for a longer term than two years."

The power to contract is an important subject. While making limitations on other subjects of equal importance, the Constitution made none on the power to contract, except as to the creation of "debt". It would seem if other limitation on the power to contract was intended, it would have been expressed.

The fact that the official term of office is commonly two years, together with the limitation that appropriation shall not be made for a longer term than two years, is argued as indicating a general public policy, and that in keeping with same this limitation of two years should be implied on the term of contracts.

Those provisions of government do fix the public policy with regard to them, but it can not be held that the limitation that no appropriation of money shall be made for a longer term than two years is by implication a limitation upon a contract that does not require an appropriation to be made for a longer term than two years.

Both subjects, appropriations and contracts, are of such importtance, and each so common and so essential to the administration of the government, that it is reasonable to presume that if it had been the purpose of the makers of the Constitution to prohibit the making of contracts that would extend over a period of more than two years, they would have made that purpose plain by direct reference to that important subject.

The Legislature has placed no limitation upon the contractual power in reference to the contracts for the purchase of textbooks, except that no contract shall be made for a longer term than six years. The Constitution and the Legislature having thus made or fixed the public policy of the State in regard to such contracts, it is not the province of the courts by implication or otherwise to alter or modify that public policy or to announce a different policy. The wisdom of the legislative policy authorizing contracts for as many as six years is apparent. If contracts were authorized to be made for only a year at a time, then every year there would, of necessity, be a change of the books used, or at least each year the matter would be open and up for a new contract, thus inviting frequent change in textbooks, to the detriment of the schools and the depletion of the school funds; this being brought about by extra cost of production due to a limited supply under short term contract and the probability of change.

The purpose of the law and of the contract was to secure uniformity of the textbooks for the period stipulated, as well as to reduce their cost to the State.

On account of its importance to the management of the business affairs of the State, we have thus far ruled the contractual powers of the State under the general provisions of the Constitution. It is thought also that the validity of Article 2909b and this contract under its provisions could be sustained under the provisions of Article 7, Section 3, of the Constitution, which provides for the purchase of textbooks *by the State* for free use in the public schools, and the circumstances under which it was adopted by the people. Said Article provides:

"  *  *  *  there shall be levied and collected an annual *advalorem* State tax of such an amount not to exceed thirty-five cents on the one hundred ($100.00) dollars valuation, as, with the avail-.able school fund arising from all other sources, will be sufficient to maintain and support the public schools of this State for a period of not less than six months in each year and it shall be the duty of the State Board of Education to set aside a sufficient amount out of the said tax to provide free textbooks for the use of children attend-ing the public free schools of this State; provided, however, that should the limit of taxation herein named be insufficient the deficit may be met by appropriation from the general funds of the State.''

This provision of the Constitution providing for the State to buy textbooks was adopted by the people in November of 1918.    For nearly thirty years prior to the adoption of this provision for the fur-nishing of *"free textbooks by the State"* for the use of the children attending the public free schools, the State.by statute had provided for the adoption of a *uniform system* of textbooks.

In each of the several Acts passed the Legislature fixed a term of years for which contracts for books may be let.   The constitutional provision for the State to pay for them was adopted in the light of this well established policy.

The first Act, passed in 1891, Section 1, contained the express pro-vision "That no bid from any publisher shall be entertained by said Board (the Board of Education) made for a *less* period of time than five years.''

The second Act upon the subject, passed in 1897, provided that no bid from any publisher should be entertained by the Board "made for a longer period than five years.''

The next one enacted, in 1907, contained the following provisions: "Sec. 10.   The books adopted by the Board under the provisions of this Act shall be introduced and used as textbooks, to the exclusion of all others, in the public free schools, in this State for a period cov-ering five scholastic years.''

The next, in 1911, provided for a period   covering   six scholastic years.

The next, and the one in operation at the time this constitutional amendment was adopted by the people, was enacted in 1917, and pro-vided, in Section 23: "The books adopted by the Commission under the provisions of this Act shall be introduced and used as textbooks to the exclusion of all others in public free schools of this State for such period of years as may be determined by the Commission, not to exceed six years in any case.''

The Legislature at the session   it submitted   the constitutional amendment to a vote of the people enacted a provision in the text-book law requiring that, in case the amendment should be adopted

or for any reason the State should furnish free textbooks for use in the public schools, "the books covered by such contracts shall be continued in use until the expiration of such contracts at the prices contracted for", and that the contractors should agree that the State should have all the benefits of such existing contracts. Article 2909oo.

In adopting that particular amendment providing by an annual tax for the purchase of textbooks and payment therefor *by the State*, we are not to presume that the electors were ignorant of the fact that for more than thirty years uniform textbooks were provided for the schools under contracts running from one to six years, as authorized by statute. On the contrary, the implication or presumption should be indulged that the taking over of the purchase of free textbooks by the State under a practice so well known was and should be in conformity to such practice, and that such plan and practice should be continued and fostered.

We must hold, also, that the duties of respondent in the performance of relator's contract with the State are purely ministerial, and that he is without authority to contest its validity on account of the alleged irregularities in its execution. The recent case of American Book Co. v. Marrs, Superintendent, 113 Texas, 291, 253 S. W., 817, is controlling upon this issue. In that case, after setting out the provisions of the *Constitution* and the *statutes* relating to the distribution of the available free school fund of the State and to the purchase and distribution of free textbooks for use in public free schools by the *State Board of Education*, this Court said:

"The Constitution having placed the distribution of this fund in the hands of the State Board of Education, the grant is exclusive and the power must be exercised by them alone or under their direction. State v. Moore, 57 Texas, 307; Gilliam v. Null, 58 Texas, 298; Parks v. West, 102 Texas, 11."

It held that the power was granted *exclusively* to the State Board of Education to ascertain the number of books needed; to determine the amount, and set aside from the available school fund the necessary funds for the purchase of free textbooks; and to determine who are contractors with the State. It is its duty to purchase and distribute free textbooks under the management of the Superintendent of Public Instruction. In these matters respondent is subject to their directions, and his duties are ministerial.

The State itself, through its proper officers, may contest the validity of its contracts, or for sufficient cause may maintain action to annul them.

The Attorney General of the State is the officer authorized by law to protect the interests of the State in matters of this kind, and to determine whether or not suits shall be brought in behalf of the

State to test the validity of its contracts, or to annul them. This discretionary power is lodged with him. The wisdom of this is easily seen.

The founders of our Government and our lawmakers knew that contracts involving large sums would be entered into by the State, and that many bidders and rival concerns would compete for such contracts.

The Government placed in the hands and under the control of the legal department, which makes no contracts itself, the authority, duty, and responsibility of passing upon the validity of such contracts and of bringing actions to cancel them, if deemed advisable. Doubtless this was done for reasons consistent with the harmonious and effective administration of governmental affairs.

The office of Attorney General is one of ancient origin, and in all jurisdictions its duties have been multifarious, necessarily involving at all times the exercise of broad judgment and discretion. See Generally 6 Corpus Juris, p. 804, Article "Attorney General". Even in the matter of bringing suits the Attorney General must exercise judgment and discretion, which will not be controlled by other authorities. Lewright v. Bell, 94 Texas, 556, 63 S. W., 623.

Where, as is clearly conceded in this case, there was no intent to violate the law, but a *bona fide* effort made to comply therewith; where both relator and the State Textbook Commission undertook to put in proper form the contract previously agreed upon; and where this was done in a manner which it is vigorously insisted has always heretofore been followed as a substantial compliance with the statute, the more would be apparent the reason and purpose of the law that the State itself, through its regularly constituted officer, should be clothed with the authority and responsibility of annulling or resisting the contract.

Article 2909n of the textbook statute specially clothes the Attorney-General with this authority in regard to textbook contracts. It reads:

"The State may *at its election* cancel any contract entered into by virtue of the provisions of this Act for fraud, or collusion, or material breach of contract upon the part of either party of the contract, or any member of the commission, or any person, firm or corporation or their agents making said bond or contract; and for the cancellation of any such contract the Attorney-General is hereby authorized to bring suit in the proper court of Travis County, * * * "

It does not require that he cancel and annul a contract with book companies, even for fraud or collusion. It is left to his *election*. It may be that the State would desire the benefits of a contract, even though there were fraud or collusion in its procurement.

Here there is not an intimation of fraud or collusion in the matters of securing the contract. Was it intended by the textbook statutes that, though the Attorney-General may have book contracts cancelled for fraud, and may waive the fraud and maintain the contracts and hold the book companies bound under them, if the State so chooses, yet that respondent can annul the action of the State Board of Education upon contracts of the State Textbook Commission, and can of his choice and discretion question the legality of contracts so made?

The Attorney-General, with this duty and authority, has brought no suit to cancel this contract, which on its face in so far as the contract itself is concerned appears regular and valid. The Board of Education, charged by the Constitution and the Statutes with determining who are contractors to furnish textbooks, has found that relator has a contract with the State, and has certified the contract to respondent for his observance, with instructions to perform same according to its terms. As a ministerial officer he is thoroughly protected by the actions of the Textbook Commission, as evidenced by the contract and the action and instruction of the Board of Education.

It is not for this court, nor any court, nor for respondent, the Superintendent of Public Instruction, to consider the question as to whether the contract is beneficial to the State, or whether or not it should have been made. That is clearly not within the powers of a court or of a ministerial officer. Neither is it within the power of a ministerial officer to declare void and refuse to enforce and to comply with a contract that has been duly and officially approved by those authorized and charged by the law to pass upon and to effect its execution. If it were within the powers of a ministerial officer to question such contracts, on their face regular and valid, chaos in government would soon reign. Responsibility would not be fixed, and any employee or agent anywhere along the line of performance could, at his discretion, if the contract did not suit him or his idea of regularity, stop its enforcement. Under such condition no contract could be enforced, and no one would dare contract with the State. Fixedness of responsibility is a necessity in government.

Considering this contract, regular on its face, in connection with the allegations of the respondent, in the light of Revised Statutes, Article 2909n, hereinbefore quoted, we have concluded that the contract is not an absolutely void one. It would be unreasonable to say that *"fraud or collusion"* make a contract only voidable, and then say that a failure to follow the statute in the respects here in issue would make the agreement void.

The allegations of respondent that the contract was not approved by the Textbook Commission, and that the bond required by law was

not duly presented to and approved by it, as required by Article 2909h, do, however, raise the issue as to whether or not the contract is a voidable one at the suit of proper parties in a proper court. In this case, however, respondent being a ministerial officer, and not clothed with the discretionary power to avoid it or to contest the effectiveness of a mere voidable contract, the issues here tendered are not properly before this Court for consideration. Until the officers who are clothed with authority to elect to avoid this contract inaugurate proper proceedings to effect that end, this Court is without authority to adjudicate same.

The State Board of Education has directed respondent to observe this contract. The State has taken no steps to challenge its validity. Therefore respondent, independent of his judgment as to the wisdom of the Textbook Commission in making it, cannot but acquiesce in the decision of the State Board of Education.

The writ is granted as prayed for.

## ON MOTION FOR REHEARING.

If the State authorizes a certain officer or legal body to contract for it in regard to a certain subject, no other officer or governmental agency can exercise the authority to contract relating to that subject, nor exercise authority to ratify or give effect to a contract not actually made by the authorized person or body. The duty of doing and performing the essential things necessary to the creation of the contract and the acts which involve discretion cannot be delegated to another.

In the instant case, if the State Textbook Commission in making the contract with relator did all the essential things, those that involved discretion, then the contract is valid; if not, it is void. If the matter of putting the contract and the bond in form and their approval by the Textbook Commission involved no discretion, but was clerical or ministerial, the contract would be held to have been made and entered into by the Textbook Commission on behalf of the State.

As stated in the original opinion, the Commission received the bids, made the award, fixed the amount of the bond, and directed the Governor, as its Chairman, to sign the contract, after it had been compared with the bid and award, which was done.

Under the admitted facts, the contract and the bond are regular and in the form and amount as required by law and as stipulated and agreed upon by the Commission.

Art. 4928, R. S., provides for domestic and foreign corporations to become security, and ''to guarantee any contract or undertaking between * * * private corporations and the State.'' It requires certain deposits with the State Treasurer, and together with Art.

4930, R. S., fixes the conditions under which such corporations may so act and be authenticated as such sureties or guarantors.

Art. 4929, R. S., provides:

"Whenever any bond, undertaking, recognizance or other obligation is, by law or the charter, ordinances, rules or regulations of a municipality, board, body, organization, court, judge, or public officer, required or permitted to be made, given, tendered or filed, with the surety or sureties, and whenever the performance of any act, duty or obligation, or the refraining from any act, is required or permitted to be guaranteed, such bond, undertaking, obligation, recognizance or guaranty may be executed by a surety company, *qualified as hereinafter provided;* and such execution by such company of such bond, undertaking, obligation, recognizance or guaranty shall be in all respects a full and complete compliance with every requirement of every law, charter, rule or regulation that such bond, undertaking, obligation, recognizance or guaranty shall be executed by one surety or by one or more sureties, or that such sureties shall be residents, or householders, or freeholders, or either, or both, or possess any other qualification; * * * and all courts, judges, heads of departments, boards, bodies, municipalities and public officers of every character *shall accept and treat such bond,* undertaking, obligation, recognizance or guaranty, when so executed by such company, *as conforming to, and fully and completely complying with, every requirement* of every such law, charter, ordinance, rule or regulation." (Italics ours).

It is an admitted fact that such a bond was executed and filed in this matter. Its approval involved no discretion. The law approves it or makes its approval obligatory. Where the law supplies an act to be done, the thing acted upon is just as valid as if the act had been performed by those intrusted with it. The contract and bond having thus been made and authenticated, under the circumstances of this case, the court would not be justified in striking them down. The contract is neither void nor voidable.

In addition to the foregoing, we deem it advisable to make some corrections in our original opinion.

A part of our original opinion is subject to a construction not intended by us. Perhaps our opinion did not fully state or apply our holding that the Constitution and Statutes placed in the hands of the State Board of Education the authority to distribute the available public school fund and to purchase textbooks for free use in the public schools. For the constitutional and statutory authority, See Article VII, Sec. 8, of the State Constitution, and R. S., Arts. 2904-¼, 2904-¼d, 2904-¼l, and also State v. Moore, 57 Texas, 307; Gilliam v. Null, 58 Texas, 298; Parks v. West, 102 Texas, 11; and American Book Co. v. Marrs, 113 Texas, 291, 253 S. W., 817.

Without quoting from them, we deem it sufficient to say that the Constitution and the Statutes place the responsibility and ultimate authority in the matters of purchasing textbooks and their distribution with the State Board of Education.

The State Board of Education is the legally authorized body clothed with the power and authority to ascertain who have contracts to furnish textbooks to the State, and to elect for the State to accept or reject a contract for textbooks that is voidable. Some of the language in the original opinion would bear the construction that this authority might be lodged with the Attorney-General of the State. It was not our purpose to so hold, but rather to adhere to the unanswerable logic of the principles announced and discussed in American Book Co. v. Mars, Supt., *supra*, that the authority to exercise discretion in the matters of the purchase and distribution of textbooks was exclusively within the hands of the State Board of Education.

By Sec. 22, Art. IV, of the Constitution, the Attorney-General is clothed with important powers and responsibilities, and he is charged with the duty to represent the State in certain legal matters. Art. 2909n, R. S., quoted in our original opinion, especially makes it his duty to represent the State in a suit to cancel a textbook contract for fraud, etc., if the State should elect to cancel it.

But the Constitution and the Statutes have created, the State Board of Education as the body to administer this important part of the State's business.

It is unquestionably true that, under the provisions of the Constitution referred to above and the Statutes enacted in compliance with its mandates, the State Board of Education, as in the many other important school matters intrusted to its final decision, has the final authority and is empowered to act for the State in the purchase of these textbooks, and to exercise the right of election, for and on behalf of the State, to adopt and make use of a contract that may be voidable, or to reject it on account of its being voidable.

Under the facts this contract is not voidable. But if it had been, the State having elected to enforce it according to its terms, it would now be an enforcible contract.

The purpose and effect of the writ of mandamus in this case is to require respondent to give effect to relator's contract according to its terms and the provisions of the Statutes.

The motion for a rehearing is overruled.