AMERICAN BOOK COMPANY V. S. M. N. MARRS, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION.

No. 4547.  Decided March 31, 1926.

(282 S. W., 568).

**1.—Public Schools—Text Books—Duty of State Superintendent.**

A book having been adopted by · the Text Book Commission and contract for furnishing same to the State made by the State Board of Education with the publishers, it was the duty of the State Superintendent, in submitting to local school authorities by direction of the Board of Education the necessary blanks for ordering text books from the State, to do so without discrimination between books so selected and without derogatory remarks as to any of them. This duty being held not properly discharged by the State Superintendent, he is here required by mandamus to perform it. (Pp. 367-371.)

**2.—Board of Education—Contract—Waiver of Irregularities.**

In case of irregularities in making the contract between the State and publishers for furnishing free text books for public schools rendering it merely voidable at election of the State, the Board of Education has the power of making such election to waive the irregularity. Its action thereon is binding on the State Superintendent. (Pp. 370, 371.)

Original application to the Supreme Court by the American

Book Company for writ of mandamus against Marrs as State Superintendent of Public Instruction.

*W. A. Keeling,* for relator.

Under the Constitution and Laws of the State of Texas, the State Board of Education is the governmental agency clothed with the power to determine with whom contracts exist for the purchase of textbooks for the public free schools of Texas, and this power is exclusive.  Chas. Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., 722; McFall v. State Board of Education, 101 Texas, 572, 110 S. W., 739; Laidlaw Bros. v. Marrs, 114 Texas, 561, 173 S. W., 789; Chas. Scribner's Sons v. Marrs, 114 Texas, 571, 173 S. W., 793; W. H. Wheeler & Co. v. Marrs, 114 Texas, 572, 173 S. W., 793; Silver Burdette & Co. v. Marrs, 114 Texas, 573, 173 S. W., 793; D. C. Heath & Co. v. Marrs, 114 Texas, 574, 173 S. W., 794; Johnson Publishing Co. v. Marrs, 114 Texas, 575, 173 S. W., 794; MacMillan & Co. v. Marrs, 114 Texas, 576, 173 S. W., 794; Row, Peterson & Co. v. Marrs, 114 Texas, 578, 173 S. W., 795.

Respondent being a ministerial officer, has not the power to question the validity of text book contracts entered into between the Textbook Commission and textbook publishers when the contracts have been ratified and approved by the State Board of Education and recognized as binding contracts.  Row, Peterson & Co. v. Marrs, 114 Texas, 578; MacMillan & Co. v. Marrs, 114 Texas, 576; Chas. Scribner's Sons y. Marrs, 114 Texas, 11.

The duties of the State Superintendent of Public Instruction in relation to the matter of carrying out and performing the contracts of relator are purely ministerial, and he has no power to obstruct the due performance of the contracts, but it is his express duty to carry out and perform the orders of the State Board of Education.  Chas. Scribner's Sons v. Marrs, 114 Texas, 11; American Book Co. v. Marrs, 114 Texas, 40.

*Dan Moody,* Attorney-General, and *R. B. Cousens,* Assistant, for respondent.

Mr. Justice PIERSON delivered the opinion of the court.

This suit was brought by relator, in which it seeks a mandamus against respondent to require him to do and perform his ministerial and statutory duties necessary to the performance of its contract with the State for the purchase of certain textbooks, to wit: Hunter & Whitman's "Civic Science in Home and Community," and Pearson & Suzzalo's "Essentials

of Spelling," Parts I and II, by the State, and the furnishing of them by it to the State, under the terms of its said contract and the provisions of the statutes.

The law relating to the character and nature of respondent's responsibilities and duties concerning book contracts is fully analyzed and announced in the cases of Charles Scribner's Sons v. Marrs, 114 Texas, 11, 262 S. W., 722; Laidlaw Bros., Inc., v. Marrs, 114 Texas, 561, 273 S. W., 789; MacMillan Company v. Marrs, 114 Texas, 576, 273 S. W., 794; Row, Peterson & Co. v. Marrs, 114 Texas, 578, 273 S. W., 795. It has been several times adjudicated that the duties of respondent in these respects are ministerial, and that when a contract is voidable for irregularities or for fraud on the part of a contracting book company, the authority to elect for the State "to adopt and make use" of it has been vested in the State Board of Education by the Constitution and the Statutes. Further, it is provided in Article 2904¼d, Vernon's Complete Texas Statutes:

"The purchase and distribution of free textbooks for the State shall be under the management of the State Superintendent of Public Instruction, subject to the approval of the State Board of Education. All details of plans for purchase and distribution of books not definitely covered by the provisions of this law shall be subject to the laws of the State and approval of the State Board of Education."

In its petition relator alleges the execution of the contract by it and by the State through the State Textbook Commission, and that thereafter the State Board of Education approved it and ordered respondent to perform it on the part of the State; that respondent as a ministerial officer failed and refused to send out notices and requisition blanks to the public school authorities containing the names of relator's said books, as it was his duty to do, but, on the contrary, made public announcement that he would not recognize said contract, and left off and omitted the names of relator's books from the notices and requisition blanks sent out by him to the school authorities of the State.

Respondent, Marrs, in his answer says that he now recognizes said contract, has taken the necessary steps for its performance, and stands ready in good faith to continue to do so.

The case as finally pleaded resolves itself into the question whether or not respondent, Marrs, has given proper recognition to relator's said contract and has taken the necessary and proper steps looking to its performance. With that issue in view, we will state the facts as follows:

At a regular meeting of the State Textbook Commission, beginning October 12, 1925, that body made an award selecting relator's above mentioned books. The terms of the award to relator, together with the affidavits which were filed with the Commission by relator, having been delivered to the Attorney General with the request that a contract be drawn, the Attorney General on October 20, 1925, called respondent's attention to the fact that the affidavit provided for in Article 2909g, Vernon's Complete Texas Statutes, which requires that a statement be made that relator and none of its individual stockholders were interested in or in anywise connected with any other textbook publishing house, and that same shall be sworn to by the president and secretary and each of the directors, had not been complied with, in that the secretary of relator had not made his affidavit, and advised that the State Textbook Commission was without authority to make the award. On the same day relator's secretary made his affidavit in due and proper form, and same was filed in the office of the Secretary of State on October 23d, and a copy transmitted to the Attorney General on October 26th.

On November 18th, the contract having been prepared by the Attorney General's Department, same was executed by being properly and duly signed by the parties as provided by law.

On the 23d day of November the State Board of Education, after having been fully apprised of the proceeding had in the making and execution of the contract, bond, etc., ratified, confirmed and approved the contract as executed, and ordered respondent to perform same on the part of the State. A proclamation was issued by Governor Miriam A. Ferguson announcing said contract, as provided by law. However, respondent Marrs declined to recognize the contract and the jurisdiction or authority of the State Textbook Commission to make it, and declined to recognize the binding effect on him of the order of the State Board of Education, but made public announcement that he would not recognize relator's contract. Thereafter, on the 6th day of January, 1926, he sent out to the public school authorities in the State a list of adoptions made by the State Textbook Commission at its meeting in October, 1925, but omitted therefrom the names of relator's books.

On the 9th day of February, 1926, the State Textbook Commission, being recalled, passed a resolution reaffirming relator's said contract as theretofore made, and on the same day the State Board of Education met and again in its official capacity ratified and approved said contract and relator's bond, and

again directed respondent, the State Superintendent of Public Instruction to do all things necessary and required by law for the carrying out and performing of said contract.

In response to the last named instruction from the State Board of Education, respondent Marrs did certain acts and sent certain letters to the public school officials of the State, which respondent alleges to be a performance of his duties respecting relator's contract, as follows:

On March 4, 1926, respondent sent a letter to the school officials of the State which reads as follows:

"You are advised that on February 9, 1926, the State Board of Education, by a resolution, ordered me to advise you that the State Textbook Commission had made a contract with the American Book Company to supply as one of the texts on General Science to be used in the first class high schools of Texas for the six scholastic years beginning with September 1, 1926, a certain text entitled "Civic Science in Home and Community," by Hunter and Whitman. This contract is in addition to the contracts for four other books on General Science, the names of which were submitted to you in a former communication.

"I deem it my duty, however, to advise that I am informed that a suit will be instituted by the Attorney General of Texas to cancel the contract which the said American Book Company claims it has for the supplying of this book, and that there is a possibility that the contract will be canceled.

"Should you desire to use this book as the text on General Science in your school you should write the name of this book in the spaces provided for the name of the General Science text in the requisition blank which will be furnished to you. I desire to suggest also, however, that in view of the litigation which is imminent in connection with this book that you indicate also second choice from the other books mentioned in the communication heretofore sent you, so that in case you cannot be supplied with the Hunter & Whitman text your second choice can be furnished for your use.

"You are further advised that at a meeting of the said State Board of Education held on February 9, 1926, I was also ordered by the said Board to advise you that the spelling books to be used in the public schools of Texas for the ensuing six scholastic years, beginning September 1, 1926, are Pearson & Suzzalo's Essentials of Spelling, Books I and II. Since you have no choice in the matter of the selection of this text, it is only necessary for you to write in the blank provided in the requisition for spelling books the number of books required.

"You are also advised that the time within which the first class high schools may make a selection of the books which they desire to use in General Science has been extended by the Textbook Commission until April 30, 1926."

It is deemed proper to state here that there were five science books to be placed on the requisition notices, one of which was the one to be furnished by relator, and in order that the school officials might choose between them it was necessary that relator's book be presented along with the others, so that choice could be made. Also, it is reasonably probable that, before receiving the above letter and information that the time for making requisitions had been extended, some, and perhaps many, of the school authorities had made their selections from the list sent, and had sent in their requisitions.

Along with the letter of March 4th respondent also sent additional requisition blanks to the school authorities. This form, under the heading "General Science," contained a blank space which might be used by them for writing in their selection; but it did not mention the name of relator's science book nor those of its spelling books.

It is too apparent for argument that the method and manner in which notice of relator's books was sent to the school authorities was a clear discrimination against them, and one which was not only calculated to prejudice said books in the matter of requisitions for them, but necessarily would have that effect. It was a breach of respondent's duty to make any derogatory suggestion whatever regarding relator's contract or its books and to fail to include relator's books and put them upon an equal basis with other books from which selections might be made. We think it is unnecessary to further state this conclusion, as it is perfectly apparent. Not only should respondent have made no suggestion to the school authorities *to make a second choice in the event relator's science book* should be chosen, but said book should have been submitted to said school authorities on an equal footing with the other four for which contracts had been made by the State Textbook Commission.

Clearly there was no evidence of fraud in the inadvertent omission of the affidavit of relator's secretary. It was filed in due form soon thereafter. If the failure to file his affidavit with the others before the award was made was such an irregularity as to make the contract voidable, thereafter, on November 23d, the State Board of Education, with knowledge of the irregularity, elected for the State to "adopt and make use" of it.

Under the facts of the case, and it is to be presumed that all the acts have been alleged, relator's contract is valid, and should be observed by respondent without limitation or hindrance. His duties being ministerial, relator is entitled to the writ of mandamus herein, and it is ordered issued, directing and requiring that respondent cancel all requisitions heretofore made wherein relator's books are affected, and issue new notices and send requisition blanks, putting in said books with their names and other information as usual, and instruct said school authorities to make new requisitions throughout upon said subjects as are involved herein.

Respondent is enjoined from making any derogatory or damaging statements regarding the validity of relator's contract, and is restrained from sending out any requisition blanks upon the subjects contained in its contract which do not contain the names of relator's books and the necessary information regarding relator's state depository. Regarding the science books, he is directed to send out requisition blanks to the high school authorities in accordance with law, in which is included in a single list and supplied at the same time the names of the five textbooks adopted by the State Textbook Commission on General Science, together with the prices, etc., from which new selections may be made by said high school authorities.