

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

FORD C. MARTIN
)RNEY GENERAL

July 1, 1968

Honorable Frank C. Erwin
Chairman, The University of
  Texas Board of Regents
University of Texas
Austin, Texas

Opinion No. M-253

Re: Authority of the University
of Texas Board of Regents to
contract with Central Energy
Corporation for heating and
air conditioning services
for The University of Texas
Medical School, and related
question.

Dear Mr. Erwin:

     Your request for an opinion reads as follows:

     "The Board of Regents of The University
of Texas System has entered into a contract
with Central Energy Corporation of Dallas,
Texas, for heating and air conditioning serv-
ices for The University of Texas Medical School
at San Antonio, Texas. The factual situation
relating to the negotiation of this agreement
has been discussed on several occasions with
members of your staff, but an official opinion
is desired in connection with the permanent
financing of this project. Therefore, we
would appreciate very much your opinion as
to the following questions:

     "1. Are the customer and lease agreements,
which are attached to this opinion request,
dated October 6, 1967, by and between the
Board of Regents of The University of Texas
System and the Central Energy Corporation valid
and binding obligations of the State of Texas,
enforceable in accordance with the terms of the
said instruments?

     "2. Is the Board of Regents of The
University of Texas System the appropriate
agency to contract with Central Energy Cor-
proation for heating and air conditiong serv-
ices for The University of Texas Medical
School at San Antonio as contemplated by the
customer agreement?

- 1230 -

"We appreciate your cooperation in this connection. If additional data are needed, please let us know."

The contractual agreement referred to in your request is for the construction of a central plant and an underground distribution system to provide chilled water and steam to those buildings constituting The University of Texas Medical School at San Antonio. The agreement further provides that the Board of Regents shall pay the Central Energy Corporation rates prescribed in the contract for producing and circulating chilled water and also agrees to pay Central Energy Corporation rates called for in the contract for producing and circulating steam. The term of the contract is for a period of time ending August 31, 1993.

Section 26 provides:

"No Indebtedness Created. This agreement shall not be construed as creating an indebtedness against the State of Texas, and all obligations of the Board hereunder are subject to the availability of appropriations by the Legislature of the State of Texas."

In view of the various provisions of the contract referred to above, it is our opinion that the principle of law announced by the Supreme Court of Texas in City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.Sup. 1966), governs the construction of this contract. In that case the Court was determining the validity of a contract between the city and the State, whereby the city agreed to furnish water for use with the Big Spring State Hospital "as long as the State of Texas shall in good faith retain and operate said hospital on said site."

In answer to the contention that the contract was in violation of Section 49 of Article III of the Constitution of Texas, prohibiting the creation of a debt, the Court stated:

"The contention that the purchase contract was invalid because there then existed no legislative appropriation to pay for the water to be furnished in the future is answered by this Court's opinion in Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924). In that case an attack was made on an order of the State Textbook Commission purchasing certain textbooks for the public schools of Texas from Scribner's Sons.

Among other objections it was urged that the contract to buy textbooks for a five-year period was invalid because it was for longer than the two-year period of legislative appropriations and created a debt which could not be paid for out of the reserves for the biennium in which created. This Court said:

"'This contract obligates the state to introduce into and use relator's books in the public free schools for a period of five years. It obligates relator to furnish, offer, and sell these books to the state each year for five years, upon the requisition of the school authorities each year for such books as may be needed. Payment for them is to be made out of the current fund each year as they are purchased. The obligation of the contract is not to buy a fixed number or amount of books, but only so many as are needed by the schools of the state. Liability is fixed only for such amounts as are requisitioned by the trustees of the schools. The number of books purchased for any year and the amount of money applied thereto is wholly within the control of the school authorities.

"'The contract is for uniform text-books for a period of five years. No quantity is stipulated and no promise to pay, only an agreement to use the books in the schools. The statute and the contract provide that no debt is created. The obligation to pay arises only upon the purchase and delivery of books for the year when needed, and according to the purchase. The books so furnished and so purchased during any year do not make a charge on the future resources of the state, but are paid for each year as the purchases are made.'

"This Court quoted from the case of City of Tyler v. L. L. Jester & Co., 97 Tex. 344, 78 S.W. 1058 (1904), in which a long-term water purchase contract was attacked: 'The making of a contract for water for a number of years, to be delivered in the future did not create a debt against the city, but the liability of the city arose upon the use by it of the water during each year.'"

You are therefore advised that the contract in question is valid and constitutes a valid and binding obligation of the State of Texas enforceable in accordance with the terms of the contract.

Since the Board of Regents of The University of Texas System is the governing board for The University of Texas Medical School at San Antonio, you are advised in answer to your second question that the Board is the appropriate agency to execute the contract in question.

### S U M M A R Y

A contract between the Board of Regents of The University of Texas System and the Central Energy Corporation whereby the Central Energy Corporation agrees to construct a central plant and an underground distribution system to provide chilled water and steam to those buildings constituting The University of Texas Medical School at San Antonio and to provide chilled water and steam at rates specified in the contract for a term ending August 31, 1993, constitutes a valid and binding obligation of the State of Texas. City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.Sup. 1966).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
James McCoy
James Broadhurst
Scott Garrison
Dan Jones

A. J. CARUBBI, JR.
Executive Assistant