

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
State Capitol
Austin, Texas

Dear Sir:

Opinion No. O-1694
Re: Promissory note executed by
the Board of Regents of the
Texas State Teachers Colleges
in payment of the cost of con-
structing a post office build-
ing on the main campus of
North Texas State Teachers
College.

We have your letter of November 13, 1939, in
which you request our opinion with reference to a promis-
sory note executed July 1, 1939, by the Board of Regents
of the State Teachers Colleges of Texas, and payable to
The Student Memorial Loan Fund of the North Texas State
Teachers College, Denton, Texas. A copy of said note is
attached to your letter. This note, which is signed by
the President and the Secretary of the Board of Regents
of Texas State Teachers Colleges, reads as follows:

"$10,000.00                            C-2
                              Denton, Texas,
                              July 1, 1939

"On or before July 1, 1957, without grace,
for value received, the Board of Regents of the
Texas State Teachers Colleges, acting for and in
behalf of North Texas State Teachers College,
Denton, Texas, promises to pay to the order of

THE STUDENTS MEMORIAL LOAN FUND OF THE
NORTH TEXAS STATE TEACHERS COLLEGE, DENTON,
TEXAS

Ten Thousand Dollars                    $10,000.00

Honorable Tom C. King, Page 2

with interest from date at the rate of 5% per annum, on the unpaid balance, payable semiannually on each January 1 and July 1 after date.

"This note is given for the loan of said $10,000.00 to be used in the construction and equipment of a post office building on the main campus of North Texas State Teachers College under the specifications and supervision of Wyatt C. Hedrick Architects.

"The principal sum of this note shall be retired in installments of Five Hundred ($500.00) Dollars on January 1, 1942 and each January 1 thereafter except January 1, of 1953, 1955, and 1957 on which dates the installments shall be One Thousand ($1,000.00); Dollars each, and on July 1, 1957, a final installment of Five Hundred ($500.00) Dollars, as is set forth in the attached schedule of amortization.

"To guarantee and safeguard the payment of this note, both as to principal and interest, the Board of Regents, through its president and secretary, hereby pledges the income, less a fixed building depreciation charge of 2% per year, from the rental of the new post office quarters by the United State Post Office Department at One Thousand Eighty (1,080.00) Dollars per year, - (renewable ten-year rental agreement as evidenced by written acceptance of our proposal with date of June 4, 1939, by the Fourth Assistant Postmaster General, dated June 30, 1939), and the said income shall be and is hereby set aside for the payment of this note and interest.

"It is expressly understood and agreed that this note does not constitute any personal liability, whatsoever, against any member of the Board of Regents and that it can in no wise ever be construed to be a liability against the State.

"The President and the Business Manager of the North Texas State Teachers College are hereby directed and required to apply the pledged income in the manner herein set out, until the principal and the interest of this note are fully and completely paid.

Honorable Tom C. King, Page 3

> "If the rental contract should not be re-
> newed for a sufficient length of time to retire
> this note, the Board of Regents hereby pledges
> whatever local funds may be available to the com-
> pletion of the payments as scheduled.

> _____
> President, Board of Regents

> _____
> Secretary, Board of Regents
> Texas State Teachers Colleges"

After calling our attention particularly to the last paragraph in said note, you request our opinion upon the following questions:

> "(1) Is the Board of Regents empowered to
> borrow money from this source when the terms of
> the loan provide for repayment over a period of
> eighteen years?

> "(2) Under the terms of the note, is any
> person or group of persons charged with any duty
> of safeguarding the excess of income over note-
> retirement payments?

> "(3) Has the Board the power to pledge 'what-
> ever local funds may be available' several years
> in the future?

> "(4) If for any reason the post-office con-
> tract should not be carried out as anticipated,
> are any funds of the Board subject to the repay-
> ment of this loan?

> "(5) Is the act of borrowing this money in
> this way in contravention of any provision of the
> Constitution or laws of Texas?"

Our answer to your first question is that the Board of Regents of the State Teachers' Colleges of Texas is authorized to borrow money for the construction of the post office building on the campus of the North Texas State Teachers College, and is further authorized to pledge the revenue from said building for the payment of said loan over a period of eighteen years.

Honorable Tom C. King, Page 4

The authority of the Board of Regents to borrow the money and to execute the note above set forth is contained in the provisions of Article 2603c of Vernon's Annotated Civil Statutes, as amended. Section 1 of said Article 2603c, as amended by Senate Bill 393, Acts, Regular Session, 46th Legislature (1939), reads in part as follows:

"Section 1. That the Board of Regents of the University of Texas and its branches, and the Board of Directors of the Agricultural and Mechanical College, and its branches, and the Board of Directors of Texas Technological College, and the Board of Regents of the State Teachers College and the Board of Directors of the College of Arts and Industries are hereby severally authorized and empowered to construct or acquire through funds or loans to be obtained from the Government of the United States, or any agency or agencies thereof, created under the National Recovery Act, or otherwise created by the Federal Government or from any other source private or public, without cost to the State of Texas, and accept title, subject to such conditions and limitations as may be prescribed by each of the said Boards, dormitories, kitchens and dining halls, hospitals, libraries, student activity buildings, gymnasia, athletic buildings and stadia, and such other buildings as may be needed for the good of the institution and the moral welfare and social conduct of the students of such institutions when the total cost, type of construction, capacity of such buildings, as well as the other plans and specifications have been approved by the respective Governing Boards; . . ."

Section 2 of said Article 2603c, as amended by Chapter 459, Acts, Second Called Session, 44th Legislature, (1936) provides that the boards for the various colleges are authorized to fix fees and charges for the use of the buildings erected. Said section then further provides as follows:

"The fees and charges thus fixed along with all other income therefrom shall be considered as revenue derived from the operation of the buildings thus constructed.

"That said Boards are further authorized to make any contract with reference to the collection and disposition of the revenues derived from any building so constructed in the acquisition or construction, management, and maintenance of any building or buildings acquired hereunder . . . . In anticipation of the collection of such revenues, and for the purpose of paying the cost of the construction or acquisition of said building or buildings and grounds, said Boards are severally empowered by resolution to authorize, sell, and deliver its negotiable bonds or notes from time to time and in such amount or amounts as it may consider necessary. . . . Any bonds or notes issued hereunder shall bear interest at not to exceed six (6) per cent per annum, and shall finally mature not more than forty years from date."

Section 3 of said Article 2603c, as amended by Senate Bill 160, Acts, Regular Session, 46th Legislature, (1939) reads in part as follows:

"Sec. 3. Subject to the above restrictions, each of said Boards is given complete discretion in fixing the form, conditions and details of such bonds or notes. Any bonds or notes issued hereunder shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenues to be derived from the operation of said buildings; provided that such bonds may be refinanced by the said Boards whenever such action is found by the Board to be necessary."

Section 4 of said Article 2603c, as amended by Chapter 204, Acts, 44th Legislature (1935), provides in part as follows:

"Sec. 4. Each of said Boards is authorized and empowered to pledge all or a part of such revenues to the payment of such bonds or notes, and to enter such agreements regarding the imposition of sufficient charges and the collection, pledge and disposition of such revenues as it may deem proper."

We believe that the above quoted provisions of Article 2603c authorize the Board of Regents of the State

Honorable Tom C. King, Page 6

Teachers Colleges to borrow the money from the Students
Memorial Loan Fund, and to provide for the payment of said
loan by a note payable in installments over a period of
eighteen years. Section 1 of said statute provides that
such a loan may be obtained from any source, either private
or public. Said section also authorizes the construction
of buildings which "may be needed for the good of the in-
stitution", and we believe that a post office building
would clearly come within such classification. Under Sec-
tion 2 of said Article, as well as other portions of said
statute above quoted, authority is given to execute notes
bearing interest as high as six per cent and payable over
a period not exceeding forty years.

We further believe that the above quoted statu-
tory provisions, authorizing the Board of Regents to borrow
said money and to execute a promissory note providing for
the payment thereof, are constitutional. A very similar
statute was involved in the case of Texas National Guard
Armory Board v. McCraw, 126 S. W. (2d) 627 (Supreme Court,
decided March 29, 1939). In this case it was held that a
statute was constitutional which authorized the issuance
of bonds by the Texas National Guard Armory Board in pay-
ment for the cost of constructing armory buildings, which
bonds were to be paid out of the receipts from the leasing
of said buildings. The bonds were due on or before Septem-
ber 1, 1970, and pledged the rents, issues and profits of
the buildings erected with the proceeds of the bonds to pay
the same. The Supreme Court held that the statute author-
izing the borrowing of the money and the execution of the
bonds was not in violation of Sections 49 and 50 of Article
3 of the Constitution nor was it in violation of Section 6
of Article 8. The reasoning of the Supreme Court was that
the bonds did not create any liability against the State
of Texas, but merely an agreement to use part of the revenue
to be derived from the buildings to be constructed with the
money which had been borrowed by the board. The court fur-
ther held that there was no pledge of the credit of the State,
because the bonds were payable only out of the revenue re-
ceived. Citing the case of Charles Scribner's Sons v. Marrs,
114 Tex. 11, 262 S. W. 722, the court said that "obligations
that run current with revenues are not debts within the con-
templation of the Constitution."

We believe that the case of Texas National Guard
Board v. McCraw, supra, is directly in point and sustains
the constitutionality of the provisions of Article 2603c,

Honorable Tom C. King, Page 7

insofar as said article authorizes the borrowing of the money for the construction of a post office building by the board of regents and the execution of the promissory note above quoted, providing for the repayment of said loan over a period of eighteen years, and pledging the revenue from said building to the payment of said loan. The following cases also sustain the conclusion here reached: Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S. W. (2d) 629; Brazos River Conservation and Reclamation District v. McCraw, 126 Tex. 506, 91 S. W. (2d) 665; Cherokee County v. Odom, 118 Tex. 288, 15 S. W. (2d) 538.

Our answer to your second question is that under the law, the group of persons charged with the duty of safeguarding the excess of income over the amount necessary to take care of the payments provided for in said note, is the Board of Regents of the State Teachers Colleges, and that said Board of Regents, under the law, and under the terms of said note, may validly delegate the clerical and administrative details in connection with the handling of said funds to the President and the Business Manager of the North Texas State Teachers College, or to such other employees or agents as they may deem proper. Said Board of Regents and such agents or employees must, of course, comply with the statutes regarding the proper disposition of such funds.

Article 2644 of the Revised Civil Statutes provide that the general control and management of the State Teachers Colleges of Texas shall be vested in the Board of Regents of the State Teachers Colleges.

Section 6 of Article 2603c of the Revised Civil Statutes, as amended, provides as follows:

"Upon the acquisition, construction, or erection of such building or buildings, absolute control and management shall vest in a respective board of the institution of the building so constructed or acquired, subject to any condition that may be provided in the grant."

Under the provisions of the statutes quoted above, the ultimate duty and responsibility of safeguarding the revenues from the post office building would be in the Board of Regents of the Texas State Teachers Colleges. However, it

Honorable Tom C. King, Page 8

is well recognized that an administrative board may designate agents to perform clerical or purely administrative duties, Russell v. Cage, 66 Tex. 428, 1 S. W. 270; and the Board of Regents would therefore be permitted to delegate such duties to the President or the Business Manager or some other employee or agent of said Board.

The second from the last paragraph in the note, quoted above, provides that the President and the Business Manager of the North Texas State Teachers College are directed and required to apply the said income in the manner set out in the note, but we do not think that the provision of the note would prevent the Board of Regents from designating other persons to handle the revenue from this building, if they saw fit to do so.

Our answer to your third question is that in our opinion the Board of Regents of the Texas State Teachers Colleges does not have the lawful power to pledge local funds which may be available several years in the future.

Section 3 of Article 2603c, which we have quoted above, provides that a note issued under the authority of said article, "shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenue to be derived from the operation of said building." There is no other provision of said article which would authorize the pledging of local funds.

Article 2654d, Section 1, of Vernon's Annotated Civil Statutes, provides in part as follows:

"The governing boards of the . . . North Texas State Teachers College at Denton, . . . may retain control respectively of the following sums of money collected at each of said several institutions in carrying out the functions of an educational institution, such as funds collected from student fees of all kinds; charges for use of rooms and dormitories; receipts from meals, cafes and cafeterias; fees on deposit refundable to students under certain conditions; receipts from school athletic activities; income from student publications or other student activities; receipts from sale of publication products and miscellaneous supplies and equipment; students' voluntary deposits of

Honorable Tom C. King, Page 9

money with said schools for safe keeping; all
other fees and local institutional income of
a strictly local nature arising out of and by
virtue of the educational activities, or re-
search or demonstration carried on by each and
all of said several schools."

It will be noted that Article 2654d provides that
the board "may retain control" of local or institutional
funds, but said article does not give express authority to
the board of regents to pledge local funds which may be
available in the future. When all of the sections of Arti-
cle 2654d are construed together, we believe that it is
evident that the intention of the Legislature was to give
the local boards merely the right to keep such local funds
in a local depository, instead of requiring that they be
transmitted to the State Treasury, and that there was no
intention to confer on such boards the power to pledge such
local funds as might accumulate in the future. The power
to pledge such funds is, we believe, one which the Board
of Regents would not have in the absence of express legis-
lative authority. It is well settled that "public officers
and governmental and administrative boards possess only such
powers as are expressly conferred upon them by law or are
necessarily implied from the powers conferred." 34 Tex.
Juris. 440.

In the case of Fort Worth Cavalry Club v. Sheppard,
125 Tex. 339, 83 S. W. (2d) 660, Judge Critz of the Supreme
Court said:

"All public offices and officers are crea-
tures of law. The powers and duties of public
officers are defined and limited by law. By be-
ing defined and limited by law, we mean the act
of a public officer must be expressly authorized
by law, or implied therefrom. 22 R. C. L., p.
555, § 114. It follows from the above that pub-
lic officers may make only such contracts for
the government they represent as they are author-
ized by law to make."

Article 2909a, of Vernon's Annotated Civil Stat-
utes, as amended by Senate Bill 28, Acts, Regular Session,
46th Legislature (1939), authorizes the use of local funds
in payment of the notes or bonds which may be issued for
the construction of buildings, in certain instances. Section
1 of said Article provides in part as follows:

Honorable Tom C. King, Page 10

". . . nor shall any local or institutional funds in excess of twenty-five (25%) per cent of the total for any calendar year ever be used for the payment of said notes or bonds. It being the intention of the Legislature to authorize the payment of said notes and bonds solely from revenues derived from the improvements authorized herein and an emergency to be supplemented from local funds not exceeding twenty-five (25%) per cent for any fiscal year."

It will be noted that this article does not authorize the pledging of local funds but merely their use in case of emergency. Furthermore, we believe that this article is no authority for the pledging of local funds in this case, because said article applies only to "dormitories, colleges or stadiums" and would not apply to other buildings. In this connection, we refer you to our opinion No. 0-1273, by Assistant Attorney General Clarence E. Crowe, addressed to Honorable J. A. Hill, President, West Texas State Teachers College, wherein we held, among other things, that said article (referred to in said opinion as Senate Bill 28) authorized the use of local funds only for the buildings specifically named in Section 1 of said article. For your information, a copy of said opinion is enclosed herewith.

Our answer to your fourth question is that if the post office contract is not carried out as anticipated, and the revenue from the rental or use of said building is not sufficient to meet the payments on the note, the Board of Regents may not use any local or other funds except the revenue from said building for the payment of the said note.

As we have heretofore pointed out, the note expressly provides that "it can in no wise be construed to be a liability against the State." Furthermore, Article 2603c, quoted above, provides that such note shall be payable solely from the revenues to be derived from the operation of said building. The power of the regents to execute the note, and to provide for the payment of the loan out of the revenues from said building over a period of eighteen years, is exempt from the constitutional prohibitions in Article 3, Sections 49 and 50, and Article 8, Section 6, solely because no debt against the State is created and there is no pledging of the credit of the State, nor is there any appropriation of public funds in the pledging of the revenues from

Honorable Tom C. King, Page 11

the building.

It would seem therefore clearly to follow that an appropriation of public funds, either from the general fund in the State Treasury, or from local or institutional funds, would be in violation of Article 3, Section 44, of the Constitution, which provides in part that the Legislature shall not "grant, by appropriation or otherwise, any amount of money out of the treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by preexisting law. . . ."

There being no liability against the State because of the construction of said building, under the express terms of the contract and of the statute authorizing the construction of the building, there would be no "preexisting law" to serve as the basis of the appropriations of any public funds to repay the loan, and such appropriations would be in violation of Article 3, Section 44. Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2d) 660.

We believe that the same prohibition would apply to local funds as well as to funds which had been deposited in the State Treasury. This Department has previously ruled the similar fees, collected by the Department of Education, are public funds. See conference opinion No. 3012, dated February 3, 1938, by Assistant Attorney General William J. Kemp, addressed to Hon. Tom C. King, State Auditor and Efficiency Expert, and found in the published opinions of the Attorney General, 1936-1938, page 127.

Furthermore we wish to direct your attention to the fact that the local funds of the educational institutions have been treated by the Legislature as public funds, in that they have been appropriated to such institutions in the general educational appropriation bill. House Bill No. 255, Acts, Regular Session, 46th Legislature (1939), in subdivision 3 of the general provisions attached to said bill, provides as follows:

"Subsection (3) Institutional Receipts. No property belonging to any of the institutions herein provided for, or any agency thereof, shall be sold or disposed of without the consent of its

402

governing board, and all proceeds from the sale of such property, from labor performed, from the sale of materials, crops and supplies, from fees and any and all other receipts shall become and are hereby appropriated as maintenance or contingent fund to be expended under the direction and with the approval of the governing board having jurisdiction. Said governing boards are authorized to use out of the proceeds of said receipts and funds, in accordance with the provisions of this Act, such amounts as they shall deem necessary for the support, maintenance, operation and improvements of said institutions. Any balances remaining to the credit of any of said institutional local funds at said institutions or in the State Treasury at the end of any fiscal year are hereby reappropriated for the above mentioned purposes for the succeeding year."

We believe that there should be no distinction made between funds required by law to be deposited in the State Treasury and local educational or institutional funds, which under the statute may be retained and placed in despoitory banks by the Board of Regents of the State Teachers Colleges, and that the Board of Regents would not be authorized to use either appropriations from the general fund or such local or institutional funds in payment of the note quoted above.

We believe that in answering your first four questions we have already answered your fifth question, which deals with the question as to whether the said actions of the Board of Regents are in contravention of any provisions of the Constitution or laws of Texas.

Very truly yours

APPROVED DEC 21, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By *James P. Hart*

James P. Hart
Assistant

JPH:AL

ENCLOSURE


APPROVED
OPINION
COMMITTEE
BY BWB