

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

WAGGONER CARR
ATTORNEY GENERAL

January 14, 1964

Honorable J. N. Nutt
Commissioner of Insurance
Austin, Texas   78701

Dear Mr. Nutt:

Opinion No. C-206

Re:   Termination agreements with
Southwestern Bell Telephone
Company.

Your request for an opinion reads as follows:

"I enclose copies of the following:

"(1)   Contracts executed by Southwestern
Bell Telephone Company and State
Board of Insurance on February 12,
1962.

"(2)   Statement of termination charges
presented by Southwestern Bell
Telephone Company as of November
27, 1963.

"(3)   Our letter of December 11, 1963,
addressed to Mr. William J. Burke,
Executive Director, Board of Control.

"(4)   Mr. Burke's letter of December 18,
1963, from Board of Control to State
Board of Insurance.

"Your office is already familiar with the
Centrex contract which was made by and between
the State of Texas and Southwestern Bell Tele-
phone Company.   In the light of the facts re-
vealed by the attached papers, we request your
opinion as to whether the Commissioner of In-
surance should certify the claimed termination
charges to the Comptroller of Public Accounts for
payment.

"The marginal notations which we have lined
out were not a part of the contracts and should
be ignored.

"This opinion request has been approved
by the State Board of Insurance."

Various termination agreements are submitted with
your request. The termination agreement with the Board of
Control reads as follows:

"As provided by the General Exchange
Tariffs of the Southwestern Bell Telephone
Company, this agreement is supplemental to
the regular contract for telephone service
between the undersigned parties and is ef-
fective for 60 months starting from the date
of installation of the following equipment,
facilities or service: 740-E Dial PBX Sys-
tem. Located at Austin, Texas.

"In the event that the contract for the
use of the equipment, facilities or service
described above is terminated by the customer
within the minimum service period of 60 months,
the undersigned customer, or its assigns,
agrees to pay to the telephone company ter-
mination charges equal to $5700.00 reduced
by 1/60 for each month service is retained,
with proportionate reductions for fractional
portions of a month.

"Where the use of a portion of the equip-
ment, facilities or service subject to termi-
nation charges under this agreement is termi-
nated within the minimum service period, ter-
mination charges apply, equal to the original
net cost of that portion of the equipment or
facilities the use of which is terminated,
reduced by 1/60 for each month service is re-
tained, with proportionate reductions for
fractional portions of a month.

"If, at the customer's request, engineer-
ing, manufacturing or installation work once
begun is stopped and the installation is not
completed, the customer agrees to pay the net
costs incurred in lieu of the above termination
charge.

"The destruction or partial destruction
of the customer's premises by fire, flood,
storm, or other acts of God shall not be con-
sidered as a termination under this agreement,
if following such destruction or partial de-
struction of the customer's permises, the
service covered by this agreement is re-
established within thirty (30) days either
at the same or another location. Such inter-
ruption of continuous service shall not be
considered as a break in the effective period
of this contract. Any such interruption of more
than thirty (30) days but not more than one
(1) year shall cause an extension of this agree-
ment equal to the duration of the interruption.
Any such interruption beyond one (1) year shall
terminate this agreement but the payment of
termination charges as above mentioned shall
be paid by the customer as of the date of in-
terruption.

"This agreement shall not be construed
as creating any debt by or on behalf of the
State and/or the State Board of Control, and
all obligations of the State are subject to
the availability of appropriations by the
Legislature."

The termination agreement with the State Board of
Insurance is identical with the termination agreement with
the Board of Control, with the following exceptions:  the
amount and time and date of execution are different; and
the last paragraph contained in the termination agreement
above quoted is not contained in the termination agreement
with the Board of Insurance.

The termination agreement with the Board of Control
was submitted to this office for approval at the time of
execution by the Board of Control. In view of the provisions
of Section 49 of Article III of the Constitution of Texas pro-
hibiting the creation of a debt by or on behalf of the State,
and Section 6 of Article VIII of the Constitution of Texas,
prohibiting any appropriation of money for a longer period than
two years, this office felt that the last paragraph of the
termination agreement quoted above was essential to the validity
of the contract.

Section 49 of Article III of the Constitution of Texas provides:

"No debt shall be created by or on behalf of the State, except . . ." (Exceptions not applicable).

The leading cases pertinent to your inquiry are Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935). In Charles Scribner's Sons v. Marrs, supra, the court was considering the validity of a contract for the purchase of certain books for a period of five years. The obligation of the contract was not to buy a fixed number or amount of books but only so many as needed by the schools of the State. The court held, therefore, that since the contract did not make a charge on the future revenues of the State, no debt was created nor was Section 6 of Article VIII of the Constitution of Texas violated.

The case of Fort Worth Cavalry Club, supra, involved a lease contract for a period of five years. The court held that the contract was void since the adjutant general had the implied power to make a contract only within the amounts of the appropriation and the period of the appropriation.

In Attorney General's Opinion C-134, involving a proposed lease contract, it was held:

"Therefore, if the proposed contract is payable out of future revenues of the State rather than current appropriations, the same is invalid. In the event there are sufficient monies appropriated by the Legislature for the payment of the entire lease term contemplated by the contract, a contract leasing land by these agencies for a longer term than two years would be valid, if paid out of current revenues."

In view of the foregoing, you are advised that the termination agreement between Southwestern Bell Telephone Company and the State Board of Insurance is invalid, since the terms of the agreement attempted to create an obligation of the State beyond current appropriation (current appropriation to the State Board of Insurance, at the time of execution of the agreement on July 11, 1962, expired August 31, 1963) and therefore the same constituted the creation of a

debt, in violation of Section 49 of Article III of the Constitution of Texas.

The termination agreement between the State Board of Control and the Southwestern Bell Telephone Company made all obligations of the State subject to the availability of appropriations by the Legislature, and no such appropriations have been made. Therefore, no obligation to pay the submitted claim by Southwestern Bell Telephone Company was created by the agreement.

The claims for termination charges of Southwestern Bell Telephone Company which are involved in your request are invalid for the reason that the removal of existing equipment was not caused by any termination of agreements on behalf of the State, but rather was the consequence of a mutual agreement between Southwestern Bell Telephone Company and various agencies of the State for the installation of the Centrex System. You are therefore advised that it is our opinion that claims for termination charges by Southwestern Bell Telephone Company are not valid.

## S U M M A R Y

Claims designated by Southwestern Bell Telephone Company as termination charges for the removal of existing equipment at the time the Centrex System was installed in various State offices are not valid for the following reasons: (1) removal of the existing equipment was the result of a mutual agreement between agencies of the State and Southwestern Bell Telephone Company, rather than a termination of any agreement by any agency of the State; (2) various termination agreements were payable out of future revenues of the State and, therefore, were an attempt to create a debt in violation of Section 49 of Article III of the Constitution of Texas; (3) other agreements specifically provided that any obligation was subject to the availability of appropriations made by the Legislature, and no appropriation was made for this purpose; (4) no appropriation is available to pay any termination charge.

Yours very truly,

WAGGONER CARR
Attorney General

By: John Reeves

John Reeves
Assistant

JR:ms:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman

J. C. Davis
George Gray
H. Grady Chandler
Howard Fender

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone